UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,                                    **MEMORANDUM**
                                              **and OPINION**

                                              IN CLERK'S OFFICE
- against -                                   **U.S. D** 00-CV-970 (TCP)

WILLIAM GOREN, NEW AGE                        ☆  **SEP 2 7 2005**  ☆
FINANCIAL SERVICES, INC., NEW
TIMES SECURITIES SERVICES, INC.,              **LONG ISLAND OFFICE**

Defendants.
--------------------------------------------------------X
PLATT, District Judge.

   Barbara Gilman and Craig and Joanne Roffman ("the claimants"),

general unsecured creditors of New Age Financial Services ("New Age") and

New Times Securities Services, Inc. ("New Times"), filed objections to the

Securities and Exchange Commission's ("SEC") proposed order authorizing a

final distribution of claims against New Times, New Age, and William Goren (the

"Defendants").  For the following reasons, these objections are **OVERRULED**.

**Summary of Facts**

I. The SIPA Liquidation

   From approximately 1983 until 2000, William Goren used two

companies, New Age and New Times, to defraud hundreds of investors.  On

February 17, 2000, the SEC filed a complaint against the Defendants, requesting

this Court issue a preliminary injunction to freeze the Defendants' assets.  The

order was granted the following day. On May 18, 2000, the District Court issued an order placing New Times into liquidation pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). *In re: New Times Securities Services Inc.*, 371 F.3d 68, 72 (2d Cir. 2004). The proceeds from the liquidation would be distributed to defrauded investors ("the SIPA Liquidation").[1] *Id.*

## II. Claimants

On July 17, 2001, Barbara Gilman, an executive assistant at New Age, filed a $4,850 claim against New Age for unpaid salary and 401K matching funds. Gilman's claim was not based on an investment in New Age. Consequently, the SEC had no jurisdiction over her case and she received no distribution from the SIPA liquidation.[2]

---

[1] The SIPA liquidation moved forward in the following manner: "On November 27, 2000, the Bankruptcy Court granted the Trustee's motion - with support from the Receiver - to substantively consolidate the New Times and New Age estates. The combined estates are being administered by the Trustee pursuant to SIPA and the Bankruptcy Code. The SIPA Trustee has paid out approximately $20 million to New Times and New Age investors." (Order, 9:00-cv-00970-TCP, Entered July 6, 2005, p. 6).

[2] The Bankruptcy Court only distributed proceeds to claimants who could be considered "customers" under SIPA. *In re: New Times Securities Services Inc.*, 371 F.3d 68 (2d Cir. 2004). SIPA defines "customer" in relevant part as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of *securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping*, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

15 U.S.C. § 78*lll*(2) (1994) (emphasis added).

Ms. Gilman had not acquired, received, or held securities from either New Times or New Age and thus was not considered a customer. In fact, she was and filed only as an employee of New Age.

Unlike Ms. Gilman, the Roffmans had invested in one of Goren's companies, purchasing shares in a non-existent money market fund called the New Age Securities Money Market Fund. The Roffmans filed a claim against New Age in the SIPA liquidation. This Court held that the Roffmans' claims were allowed under SIPA and awarded them Four Hundred Thousand Dollars ($400,000). (Order, 9:00-cv-00970-TCP, Entered May 31, 2004, p. 3). Roffman now makes a claim for $252,194 based on an un-recovered "'out of pocket' net cash loss sustained at the time of the theft."[3] (Roffman's Objection, Aug. 8, 2005). The parties agree that the Roffman's claim is unsecured, and apparently it lies only against New Age.

## III. The Distribution of Goren's Assets

On July 6, 2005, this Court authorized the claims administrator to make a final distribution of William Goren's personal assets. Under the distribution plan, Goren's assets are to be distributed on a pro rata basis to, "persons who made investments in promissory notes issued by Goren. . . and creditors who possess valid unsecured claims against Goren. . . " (Order, 9:00-cv-00970-TCP, Entered July 6, 2005, p. 6). Claimants argue that they are general unsecured creditors and are thus entitled to participate in the distribution of Goren's assets, even though their claims are against New Age and not Goren.

---

[3]     Roffman does not explain how this loss was incurred.

## Analysis

Claimants may not recover their unsecured claims against New Age because there are no assets of New Age left for distribution. Furthermore, holders of such claims are not authorized to participate in the distribution of Goren's assets. (Order, 9:00-cv-00970-TCP, Entered July 6, 2005, p. 5)

Ms. Gilman also claims that she should be entitled to relief because "Bill Goren was New Age," arguing in effect that this Court should allow her to pierce New Age's corporate veil and proceed against Goren directly. Gilman's argument is without merit. New York has a strong presumption of limited liability for corporations. *Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989). To overcome this presumption, Gilman must show, among other things, that New Age possessed more than "unsubstantial or nominal assets." *Berkey v. Third Avenue Railway Co.*, 244 N.Y. 84, 88 (1926). Because Gilman's has not made the proper factual allegations herein, her argument must fail.

In this Court's opinion, the present objections are without merit. Accordingly the same are **OVERRULED**.

**SO ORDERED**

Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
September 27, 2005

4